**FILED**

OCT 0 6 2011

CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| )  | |
| Plaintiff,    ) | |
| )  | |
| v.    )  | Civil Action No. *11-4143* |
| )  | |
| JOHN MORRELL & CO.    ) | |
| )  | |
| Defendant.    ) | |
| )  | |

### COMPLAINT

The United States of America, by and through the undersigned attorneys, by authority of the Attorney General and at the request of the Administrator of the United States Environmental Protection Agency (hereinafter "EPA"), alleges the following:

### NATURE OF ACTION

1. This is a civil action brought against John Morrell & Co. ("JMC") pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), for environmental violations at a meatpacking plant owned and operated by JMC in Sioux Falls, South Dakota ("JMC Facility"). Specifically, JMC operated an ammonia refrigeration process in violation of pertinent chemical accident prevention provisions of Clean Air Act Section 112(r)(7), 42 U.S.C. § 7412(r)(7), and its implementing regulations, 40 C.F.R. Part 68.

2. The United States seeks an injunction ordering JMC to comply with the above statutes and regulations promulgated thereunder, and civil penalties for its past and ongoing violations.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), because the JMC Facility is located in this District.

## NOTICE TO STATE

5. Actual notice of the commencement of this action has been given to the State of South Dakota as required under Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b).

## DEFENDANT

6. JMC is a Delaware corporation engaged in pork processing and manufacturing, and maintains its corporate offices in Cincinnati, Ohio.

7. JMC is a subsidiary of Smithfield Foods, Inc.

## DEFENDANT'S FACILITY

8. JMC owns and operates the JMC Facility, which is located at 1400 North Weber Avenue, Sioux Falls, South Dakota.

9. The JMC Facility consists of various buildings and grounds spread out over 2.2 million feet of land. It employs approximately 3,000 employees in 3 shifts each day, 7 days per week.

10. Approximately 17,000 hogs are delivered to the JMC Facility each day for slaughter. JMC processes the pork for sale and distribution as processed meats and other products in national and international markets.

2

11. The JMC Facility employs a refrigeration system to maintain desired temperatures in coolers, freezers, and working areas throughout the processing plant. The refrigeration system consists of a series of compressors, condensers, evaporators, vessels, piping, and valves.

12. The refrigeration system uses anhydrous ammonia as a refrigerant. According to the JMC Facility's Risk Management Plan, over 390,000 pounds of ammonia is used throughout the refrigeration system.

13. EPA conducted a two-part inspection of the JMC Facility on December 7, 2009 and April 28, 2010 pursuant to Section 112(r) of the Clean Air Act.

## STATUTORY AND REGULATORY BACKGROUND

14. The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Clean Air Act Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

15. The Clean Air Act requires the Administrator of EPA, *inter alia*, to promulgate regulations in order to prevent accidental releases of regulated substances. 42 U.S.C. § 7412(r).

16. Pursuant to 42 U.S.C. § 7412(r)(3) the Administrator has promulgated a list of regulated substances, with threshold quantities, and has defined the stationary sources that will be subject to the accident prevention regulations.

17. Pursuant to 42 U.S.C. § 7412(r)(7), the Administrator has promulgated chemical accident prevention regulations that address release prevention, detection, and correction requirements for listed regulated substances. *See* 40 C.F.R. Part 68.

18. These chemical accident prevention regulations require owners and operators of a stationary source that has more than a threshold quantity of a regulated substance in a process to

3

develop and implement a risk management program which must be described in a Risk

Management Plan submitted to EPA and which includes a process hazard assessment, a

prevention program and an emergency response program.

19. 40 C.F.R. Part 68 further subjects the owner and operator of a stationary source that

has more than a threshold quantity of a regulated substance in a covered process to the Subpart D

Program 3 Prevention Program requirements, 40 C.F.R. §§ 68.65-87. These requirements

include the following:

a. Establish and implement written procedures to maintain the ongoing integrity

of process equipment, 40 C.F.R. § 68.73(b);

b. Correct deficiencies in equipment that are outside acceptable limits related to

process safety, 40 C.F.R. § 68.73(e).

c. Perform a process hazard analysis that, *inter alia*, addresses the hazards of the

process, 40 C.F.R. § 68.67(c)(1).

d. Perform inspections and tests on process equipment, 40 C.F.R. § 68.73(d)(1).

e. Establish and implement written procedures to manage changes that affect a

covered process, 40 C.F.R. § 68.75(a).

20. Pursuant to 42 U.S.C. § 7413(b), the Administrator may commence a civil action

against any person that is the owner or operator of an affected source, to obtain civil penalties

and injunctive relief whenever such person has violated or is violating any requirement or

prohibition of the Clean Air Act, including the requirements of 42 U.S.C. § 7412 and its

implementing regulations, including 40 C.F.R. Part 68.

4

## CLAIM FOR RELIEF
### (Clean Air Act Chemical Accident Prevention Provisions)

21. Paragraphs 1 through 20 are re-alleged and incorporated by reference.

22. JMC is a "person" as defined by Section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e).

23. The JMC Facility is a "stationary source" as defined by 40 C.F.R. § 68.3.

24. Anhydrous ammonia is a "regulated substance" pursuant to 42 U.S.C. § 7412(r), and 40 C.F.R. §§ 68.3 and 68.130.

25. The threshold quantity for anhydrous ammonia, as listed in 40 C.F.R. § 68.130, Table 1, is 10,000 pounds.

26. Because the JMC Facility uses greater than 10,000 pounds of anhydrous ammonia, ammonia refrigeration at the facility is a "covered process" pursuant to 40 C.F.R. § 68.3.

27. The ammonia refrigeration process at the JMC Facility is subject to the OSHA process safety management standard of 29 C.F.R. § 1910.119.  Therefore, pursuant to 40 C.F.R.§ 68.10(d)(2), this process is also subject to the Program 3 chemical accident prevention provisions, 40 C.F.R. §§ 68.65-87.

28. The two-part inspection of the JMC Facility conducted by EPA on December 7, 2009 and April 28, 2010 revealed multiple violations of the chemical accident prevention provisions of 40 C.F.R. Part 68, including, but not limited, violations of the following specific requirements:

5

a. JMC violated 40 C.F.R. § 68.73(b) by failing to have an ASME-certified agent inspect, repair, test, seal, or replace two safety relief valves, nos. VF101-0P02 and VF102-C203, within a 5-year period as required by JMC's safety relief valve inspection procedures.

b. JMC violated 40 C.F.R. § 68.73(b) by failing to repair or replace mechanical damage on piping insulation on the booster discharge line at the end of Alley 10 of the JMC Facility, as required by JMC's piping inspection procedures.

c. JMC violated 40 C.F.R. § 68.73(e) by failing to correct damaged or deteriorated insulation on accumulator ACAM0011 and DPAM0011, despite having identified these deficiencies in work orders and visual inspection reports.

d. JMC violated 40 C.F.R. § 68.73(e) by employing combustible wooden supports for ammonia storage vessel no. TKAM0005 in contravention of recognized and generally accepted good engineering practices.

e. JMC violated 40 C.F.R. § 68.73(e) by failing to label certain piping and valves in contravention of recognized and generally accepted good engineering practices requiring proper identification of refrigeration piping.

f. JMC violated 40 C.F.R. § 68.73(e) by failing to install nameplates on certain tanks, accumulators, and condensers, in accordance with recognized and generally accepted good engineering practices.

g. JMC violated 40 C.F.R. § 68.73(e) by failing to repaint a corroded float column despite having identified such work as completed on a work order.

h. JMC violated 40 C.F.R. § 68.67(c)(1) by failing to identify, in its Process Hazard Analysis dated June 4, 2009, the hazards of potential structural failures of the highly

6

corroded support on accumulator ACAM0011, and of the deteriorated wooden supports on the ammonia storage tank TKAM0005.

    i. JMC violated 40 C.F.R. § 68.73(d)(1) by failing to inspect and complete preventative maintenance on a compressor, as directed by a work order.

    j. JMC violated 40 C.F.R. § 68.75(a) by failing to perform a management of change analysis when switching the computer software program used to generate work orders at the JMC Facility.

  29. JMC's failure to comply with these requirements of the chemical accident prevention provisions of 40 C.F.R. Part 68 violated 42 U.S.C. § 7412(r).

  30. As provided in Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject JMC to injunctive relief and civil penalties of up to $25,000 per day for each violation of the Clean Air Act.  Under the Debt Collection Improvement Act of 1996, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, as amended, penalties of not more than $37,500 may be assessed for each violation that occurs after January 12, 2009. *See* 73 Fed. Reg. 75,340 (Dec. 11, 2008).

## PRAYER FOR RELIEF

  WHEREFORE, the United States respectfully requests that this Court:

  1. Permanently enjoin JMC from further violations of the Clean Air Act and its implementing regulations;

  2. Require JMC to complete expeditiously all actions necessary to achieve and maintain compliance with the Clean Air Act  and its implementing regulations;

7

      3.      Assess civil penalties against JMC up to the maximum amounts provided in the

Clean Air Act.

      4.      Grant the United States such other relief as the Court may deem just and proper.

           Respectfully submitted,


IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division


JOHN W. SITHER
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-5484
(202) 514-0097 fax
John.Sither@usdoj.gov


BRENDAN V. JOHNSON
United States Attorney


DIANA RYAN
Chief, Civil Division
U.S. Attorney's Office
P.O. Box 2638
Sioux Falls, SD 57101-2638
(605) 357-2340
(605) 330-4402 fax
Diana.Ryan@usdoj.gov

OF COUNSEL:

MARC WEINER
Senior Enforcement Attorney
U.S. Environmental Protection Agency,
Region 8
1595 Wynkoop Street
Denver, CO 80202-1129